Matter of A.F.G. (S.A.—D.V.) (2024 NY Slip Op 51722(U))

[*1]

Matter of A.F.G. (S.A.—D.V.)

2024 NY Slip Op 51722(U)

Decided on December 16, 2024

Family Court, New York County

Wilkofsky, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 16, 2024
Family Court, New York County

In the Matter of A.F.G., L.V., 
 Children Under Eighteen years of Age Alleged to be Abused by S.A., D.V., Respondents.

File No. xxxxx

Special Assistant Corporation Counsel Adriane Eisen, for the NYC Administration for Children's Services
Christina Nevarez, Neighborhood Defender Service of Harlem, attorney for the respondent mother
Ryan Napoli, Neighborhood Defender Service of Harlem, attorney for the respondent mother
John James, attorney for respondent father/PLR
Laura Daly, Lawyers for Children, attorney for subject child A.F.G.
Brad Martin, The Legal Aid Society, attorney for subject child L.V.
Simon Turkel, attorney for non-respondent father

Yael Wilkofsky, J.

On or about December 29, 2023, the petitioner the Administration for Children's Services (hereinafter referred to as "ACS") filed Family Court Act ("FCA") Article 10 abuse petitions on behalf of the subject children A.F.G. and L.V. (hereinafter referred to as the "subject children" or "A.F.G." and "L.V.") against the respondent mother S.A. (hereinafter referred to as the "respondent mother" or "S.A.") and the respondent father/person legally responsible D.V. (hereinafter referred to as the "respondent father" or "D.V."). The respondent mother now moves [*2]for an Order permitting her unsupervised visitation with the subject children. The respondent father separately moves for an Order permitting him unsupervised visitation with L.V. For the reasons set forth below, the respondent mother's motion is granted in part and denied in part and the respondent father's motion is denied.
The abuse petitions in this case allege as follows. D.V. is the father of L.V. and a person legally responsible for A.F.G. On or about December 10, 2023 and December 11, 2023, the respondents were the only adults providing care for L.V., who was four months old at that time. On or about December 11, 2023, L.V. arrived at the hospital vomiting blood. Thereafter, L.V. was discharged to the care of the respondents. On or about December 20, 2023, L.V. returned to the hospital with multiple injuries, including fractures to her sixth, seventh, eighth and ninth posterior left side ribs, a subdural hematoma acute and subacute on each side of her brain and an abrasion on the back of her mouth. L.V. was diagnosed with abusive head trauma most likely from being shaken. According to the hospital records, L.V.'s doctor opined that three of the four fractures were displaced and could not have been caused by burping, by regular handling of the subject child or by non-accidental means, that the rib fractures are signs of physical abuse and can be dated to December 10, 2023 or December 11, 2023, that the lesion found in the back of L.V.'s mouth near her tonsils was caused by non-accidental means and could not have been caused by L.V. putting her finger in her mouth as the injury was further back than L.V. could reach, and that L.V.'s subdural hematomas could only be caused by someone shaking L.V. Additionally, according to L.V.'s doctor, the various explanations given by the respondents as to how L.V. might have sustained her injuries were not consistent with the medical findings and the respondents were not able to provide any plausible explanation for how L.V. sustained her injuries. The abuse petitions also allege that based on the alleged abuse of L.V., A.F.G., who was eleven years old at the time of the filing of the petition, is derivatively abused.
At intake on the abuse petitions, the Court granted ACS's application for a remand of the subject children pursuant to FCA § 1027 and they were placed in the kinship foster home of their maternal grandmother. The Court permitted the respondent mother to have visitation with A.F.G. supervised by the maternal grandmother and permitted both respondents to have visitation with L.V. supervised by the foster care agency only. At the next court appearances, upon applications made by the respondents, the Court permitted the respondents to have visitation with L.V. supervised by the maternal grandmother instead of the petitioner. The respondent mother now moves for an Order permitting her unsupervised visitation with both subject children. The respondent father separately moves for an Order permitting him unsupervised visitation with L.V.
Pursuant to FCA § 1030(c),
"A respondent shall be granted reasonable and regularly scheduled visitation unless the court finds that the child's life or health would be endangered thereby, but the court may order visitation under the supervision of an employee of a local social services department upon a finding that such supervised visitation is in the best interest of the child."
"[T]he presumption that parental visitation is in the best interests of a child [may be] overcome by . . . evidence showing that visitation with respondent would not be in [the child's] best interests." In re Giovanni H.B., 172 AD3d 489 (1st Dept 2019). Generally, in cases where serious allegations of abuse are made against a respondent, the Court must hold a full fact-[*3]finding hearing prior to ordering unsupervised visitation. See Matter of Daniel O. (Jaquan O.), 141 AD3d 434, 435 (1st Dept 2016) ("Given the serious allegations of abuse committed against the eldest child, it was an improvident exercise of discretion for Family Court, without the benefit of a full fact-finding hearing, to order unsupervised visitation.") This is particularly true where, despite engaging in services, the respondent parent continues to refuse to admit to any wrongdoing and fails to offer a plausible explanation for injuries sustained by the child while in the respondent's care, which establishes a continued risk to the child. See Matter of Abass D. (Mamadou D.), 166 AD3d 517, 517 (1st Dept 2018) (holding that the Family Court abused its discretion in ordering unsupervised visitation because "although [the parents] ostensibly had participated in various services and counseling, the parents continued to offer implausible explanations for the children's medical condition" which "compels the conclusion that the parents will not acknowledge their role in the children's [condition] . . . and thus that they continue to pose a risk to the children.")
As an initial matter, the portion of the respondent mother's motion for an Order permitting her unsupervised visitation with L.V., and the respondent father's motion also seeking unsupervised visitation with L.V. are denied as the Court finds that it would not be in L.V.'s best interests to have unsupervised visitation with the respondents. In this case, serious allegations of abuse have been made against the respondents regarding their treatment of L.V. when she was an infant in their exclusive care and a fact-finding hearing has not yet been held. Although the respondents are engaged in services and counseling, it is not clear whether their services are addressing the allegations in the petitions. Moreover, since the filing of the petitions, the respondents have failed to offer any plausible explanation for how L.V.'s injuries could have occurred and they have not acknowledged any role they might have played in L.V.'s injuries. Therefore, based on the allegations in the petitions that L.V.'s injuries could not have been caused by accidental means, that L.V.'s injuries occurred while she was in the exclusive care of the respondents, and the respondents' continued failure to acknowledge any wrongdoing or provide a plausible explanation for L.V.'s injuries, the Court finds that the respondents continue to pose a risk to L.V. such that unsupervised visitation is not in LV.'s best interests.
However, the portion of the respondent mother's motion for an Order permitting her unsupervised visitation with A.F.G. is granted as the Court finds that unsupervised visitation with the respondent mother would not place A.F.G.'s life or health in danger and would be in his best interests. Initially, A.F.G. is differently situated than his much younger sister as he is currently 12 years old and, unlike his sister, A.F.G. has the ability to communicate with his grandmother, petitioner's case workers and his attorney about visits with the respondent mother and any specific safety concerns he might have. Further, A.F.G. has been having resource supervised visitation with the respondent mother for almost one year and there have been no concerning incidents or any safety issues reported. Moreover, A.F.G.'s attorney strongly supports the respondent mother's request for unsupervised visitation with A.F.G. and affirms that A.F.G. loves spending time with the respondent mother, that he very much wants to have unsupervised visitation with her and that A.F.G. has never expressed any safety concern about visiting with the respondent mother or about the respondent mother's behavior toward him when he was in her care. However, the initial three unsupervised visits between the respondent mother and A.F.G. are to be sandwich visits, with the beginning and end of each visit supervised by the maternal grandmother, to ensure that there are no safety concerns at the visits.
Based on the foregoing, the respondent mother's motion for unsupervised visitation with [*4]the subject children is granted only to the extent that she is permitted to have unsupervised visitation with A.F.G. but is otherwise denied, and the respondent father's motion for unsupervised visitation with L.V. is denied. This constitutes the decision and order of the Court.
DATED: December 16, 2024
New York, NY
E N T E R:
Hon. Yael Wilkofsky, J.F.C.